# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHERYN M. SCHMIDT,<br>Plaintiff<br>v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner<br>for Operations of Social Security,<br>Defendant | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | No. 3:17cv943<br><br>(Judge Munley)<br><br>(Magistrate Judge Schwab) |

## MEMORANDUM

Before the court for disposition is Chief Magistrate Judge Susan E. Schwab's Report and Recommendation (hereinafter "R&R") which suggests the denial of the instant social security appeal. The Plaintiff Katheryn M. Schmidt (hereinafter "plaintiff" or "claimant") has objected to the R&R, and the matter is ripe for disposition.

**Background**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on January 10, 2011, alleging disability beginning on August 1, 2009. (Doc. 11-2 at 60). The Social Security Administration initially denied the claim on June 7, 2011. (Id.) The plaintiff requested a hearing before an Administrative Law Judge (hereinafter "ALJ"). The hearing was held on June 12,

2012, in Wilkes-Barre, Pa. Plaintiff, who was represented by counsel, testified as did Patricia L. Chilleri, an impartial vocational expert.

The ALJ issued a written decision on July 24, 2012. The ALJ concluded that plaintiff is not disabled under the Social Security Act and thus not entitled to benefits. (Id. at 71). Plaintiff requested review by the Social Security Appeals Council. (Doc. 1, Compl. ¶ 9). The Appeals Council denied the request for review on October 21, 2013, and plaintiff filed an appeal with the federal district court on December 23, 2013. (Id. ¶ 11). On March 19, 2015, the court remanded the case back to the ALJ. (Id. ¶ 12). The court found that the ALJ should have discussed a report regarding an MRI of plaintiff's brain which may have been related to headache pain. (Dckt. No. 1:13cv3074, Doc. 32, Memo. Dated Mar. 25, 2015).

Accordingly, another hearing was held on November 12, 2015. (Doc. 1, Compl. ¶ 13). The ALJ again denied the plaintiff's claims. (Id. ¶ 14). Plaintiff requested review by the defendant's Appeals Council, which review was denied on March 28, 2017. (Id. ¶¶ 14-15). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security, and plaintiff filed the instant appeal in this court.

The Clerk of Court assigned the case to Chief Magistrate Judge Susan E. Schwab for the issuance of an R&R. On June 11, 2018, Judge Schwab issued

her R&R in which she recommends denying plaintiff's appeal and affirming the Commissioner's denial of benefits. (Doc. 24, R&R dated June 11, 2018). Plaintiff has filed objections to the R&R (Doc. 27) and the defendant has waived the opportunity to respond to the objections. The matter is thus ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over the Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has her principal place of business ....").

**Standard of review**

As noted above, we have before us for disposition an R&R to which plaintiff has objected. In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.' " Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may

not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and supplemental security income claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[1] (2) has an impairment, or combination of impairments, that is severe,[2]

---

[1] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510 and 416.910. If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

(3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment,"[3] (4) has the "residual functional capacity" to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). As part of step four, the administrative law judge must

---

[2] The determination of whether a claimant has any severe impairments that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509, 404.1520(c) and 416.920(c). If a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

[3] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990). If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

determine the claimant's residual functional capacity.[4]  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See SSR 96-8p, 1996 WL 374184.  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  Id.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. §§ 404.1545 and 416.945; Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

In the instant case, the ALJ found that the claimant last met the insured status requirements of the Social Security Act on June 30, 2010.  (R. at 584).  He addressed the five-step analysis as follows:  At step one, he found that plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2009, through her date last insured.  (Id.)  At step two, he concluded that plaintiff has the following severe impairments:  degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, right

---

[4] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

8

hip bursitis, headaches and depression. (Id.) The ALJ next found that none of the impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to the next step, the ALJ determined the plaintiff's residual functional capacity (hereinafter "RFC"). He concluded that plaintiff can perform a limited range of sedentary work. (Id. at 586). She can occasionally bend, balance, stoop, knee, crouch and crawl. (Id.) She can never use ladders, ropers or scaffolds. (Id.) She must avoid dusts, gases, poor ventilation, vibration and unprotected heights and moving machinery. (Id.) She has the ability to perform simple work generally defined as simple, routine and repetitive tasks. (Id.)   The ALJ found that plaintiff could not perform any of her past relevant work, which included work as a hostess and receptionist/typist. (Id. at 592). But based upon the plaintiff's RFC and the testimony of an vocational expert, the ALJ found that jobs exits in the national economy for an individual with the claimant's age, education, work experience and RFC. (Id. at 593). These jobs include surveillance monitor, document preparer and assembler of small products. (Id.) Accordingly, the ALJ found that the plaintiff was not disabled as defined in the Social Security Act. (Id.)

The R&R suggests that the ALJ's conclusions are supported by substantial evidence, and therefore, the plaintiff's appeal should be denied. Plaintiff has filed objections to the R&R raising the following two issues: Did the ALJ correctly evaluate the opinion of plaintiff's pain management treating sources? and Did the ALJ adequately consider plaintiff's headaches in his RFC finding? We will address these issues in turn.

**I. Pain management treating sources**

Plaintiff has been treating at "ExcelCare Pain Management Center" with pain management specialist Dr. Maxime Gedeon since at least July 2009, and she visits her every one or two months. (R. at 316-317, 773). Physician's Assistant-Certified (hereinafter "PAC") Gretchen O'Connell worked with Dr. Gedeon on plaintiff's case. O'Connell completed a "Physical Medical Source Statement of Functional Abilities and Limitations" (hereinafter "Medical Source Statement" or "Statement") regarding the plaintiff. (See R. at 773-776). The Statement is dated January 18, 2013, however, it was ostensibly answered as to the plaintiff's condition before June 30, 2010 – two to three years earlier. (R. at 73).

The Medical Source Statement draws several conclusions. It states that plaintiff suffers from lumbar back pain, a herniated disc, and radiculopathy. (R. at 773). It lists her prognosis as fair and indicates her symptoms include lumbar

10

back pain radiating to the right lower extremity. (Id.) The pain, which plaintiff has daily, is rated at an 8 to 10 out of 10 and increases with bending, lifting, and walking. (Id.) The clinical findings are listed as decreased range of motion in the lumbar spine and positive straight leg raise, which is an indication of a herniated disk. (Id.) The treatment she had undergone includes spinal injections and opioid pain medications. The side effects of the medication include drowsiness, dizziness, decreased reflexes, and constipation. (Id.)

The Statement proceeds to indicate that the pain would frequently interfere with plaintiff's attention and concentration. (Id. at 774). She could walk less than a city block without rest. (Id.) She could sit or stand for less than five minutes each at one time and could sit or stand/walk less than two hours in an eight-hour working day. (Id. at 775). Plaintiff would have to take ten-minute rest breaks each hour. (Id.) The plaintiff's physical condition would cause her to be absent from work for more than three days a month. (Id. at 776).

The ALJ reviewed the Medical Source Statement, but decided not give weight to it. He concluded that the Statement does not relate to the relevant time frame. Although on its face, the Statement indicates that it refers to plaintiff's condition during the relevant time frame, the ALJ reasoned that it actually refers to a later period when plaintiff's condition was perhaps more severe. Specifically, the ALJ addressed the Medical Source Statement as follows:

11

> The opinion of Dr. Gedeon on January 18, 2013 far post
> dates the date last insured of June 30, 2010 (Exhibit 22F).
> Despite the representative arguing that Dr. Gedeon's
> opinion encompasses the subject period, the undersigned
> finds that the physical examination findings cited in the
> medical source statement are not evidence in the record
> for the pre date last insured period (Exhibit 5F). The
> physical examination findings were more benign and the
> pain was rated generally as moderate. Most important
> the objective evidence does not support the degree of
> limitations noted by Gedeon.

(R. at 591).

Thus, the form indicates that it reflects plaintiff's condition prior to the date last insured, that is June 30, 2010. The ALJ, however, concluded that the form reflects her condition after June 30, 2010. The basis for this conclusion is that Dr. Gedeon's findings pre-June 30, 2010 were more benign than provided in the Statement and the pain rated moderate according to the ALJ. The plaintiff argues that Dr. Gedeon's records from the appropriate time-period, do in fact back up the Medical Source Statement, and it should not have been discounted by the ALJ. We must determine whether substantial evidence supports the ALJ's determination that the Medical Source Statement does not relate to the relevant period. After a careful review, we find that substantial evidence does support the ALJ's decision.

The issue we have to decide is whether Dr. Gedeon's records pre-dating June 30, 2010, support these conclusions or whether Dr. Gedeon's records

indicate more benign physical findings pre-dating June 30, 2010.[1]  First, we will discuss whether the records indicate more benign physical findings than those recorded in the Medical Source Statement.

The Medical Source Statement lists the following clinical findings and objective signs:  decreased range of motion in the lumbar spine, positive straight leg raise, decreased sensation right L5 dermatome.  The plaintiff asserts that the findings relate to the period at issue and are supported by Dr. Gedeon's records which indicate that all of these findings were made during the relevant time frame.  We generally agree with the plaintiff.  We also, however, agree with the ALJ that the evidence reveals that not all of the clinical findings were as severe as indicated in the Medical Source Statement.  For example, the Statement which applies to the time frame of "on or before June 30, 2010, lists "reduced motion in the lumbar spine."  This clinical finding, however was last noted in October of 2009, seven months prior to the end of the relevant time frame.  (R. at 417).

More important than the clinical findings, however is the plaintiff's subjective pain.  The pain, which plaintiff has daily, according to the Medical Source Statement is rated at an 8 to 10 out of 10 and increases with bending,

---

[1] The Magistrate Judge examined the records of other medical providers from this period.  We find, however, that the ALJ's analysis references Dr. Gedeon's own records in rejecting her conclusions.  Therefore, we will examine Dr. Gedeon's records.

13

lifting, walking. (R. at 773). In rejecting the Medical Source Statement from Dr. Gedeon's office, the ALJ noted that the statement indicates a pain level of 8 to10 on a scale of 1 to 10. (R. at 773). The ALJ examined Dr. Gedeon's records for the relevant time frame and concluded that the Medical Source Statement does not relate to the time frame at issue, but rather to a later date. (R. at 591). One of the basis for this opinion is that Dr. Gedeon's records from the relevant time indicate that the pain was generally moderate. (Id.)

The plaintiff objects that the ALJ concluded that her pain was generally rated as "moderate" prior to her date last insured. The records of the relevant time frame, however, support the ALJ's conclusion. For example, after treatment, the plaintiff's pain was a 4 on a scale of 1 to 10 in October 2009. (R. at 413). It was listed as "moderate" on October 23, 2009, December 30, 2009 and January 13, 2010. (R. at 416, 421, 423). On November 6, 2009 it was listed as a 4 out of ten. (R. at 419). It was listed as moderate to severe on April 30, 2010 and July 30, 2010. (R. at 425, 430). Plaintiff described her pain as a 10 out of 10/ 9 out of 10 on June 18, 2010. (R. at 427). Over the period of time, although it did evidently increase toward the end, the pain was generally described as "moderate".

The ALJ's determination that plaintiff's pain was moderate during the relevant time is important because it supports his conclusion that Dr. Gedeon's

14

Medical Source Statement does not relate to the appropriate time period because it indicates a pain level of 8-10/10. Whereas, the records reveal that the pain level over the relevant period goes from 4 through 10. The rating of the pain in the Statement, therefore, is an indication that it does not relate to the period of time in question. The Medical Source Statement which indicates a pain 8-10/10 rating clearly is not based on the records from the pertinent time frame. Thus, the ALJ's conclusion that the pain was generally rated as moderate prior to the date last insured is supported by substantial evidence.

Therefore, we find that the ALJ's conclusion that the medical source statement did not reflect plaintiff's condition during the relevant time period is supported by substantial evidence, and this objection to the R&R will be overruled.

## II. ALJ's analysis of plaintiff's headaches

Plaintiff asserted that a part of her disability was weekly headaches which were completely debilitating. The second issue raised in the objections is whether substantial evidence supports the ALJ's determination with regard to the headaches and plaintiff's RFC finding. With regard to her headaches, the ALJ found as follows:

> At the hearing, the claimant testified to weekly headaches which were completely debilitating, however, this complaint is not supported by the medical evidence in the file. Indeed, she told her doctors that she had

15

> experienced these headaches for 16-17 years and clearly worked through them for periods of time (Exhibits 1F and 2F). There is some evidence of white matter lesions on brain scan, but no clinical correlation was indicated for these headaches. Otherwise physical examinations were normal.

(R. at 587).

Thus, the ALJ found that despite plaintiff's claim of weekly headaches for 16-17 years[2] which were completely debilitating, she did, however, work through them for periods of time. Additionally, some white matter lesions showed up on a brain scan, but they were not clinically correlated to the headaches.

The plaintiff alleges that the ALJ's analysis of the plaintiff's headaches is inadequate and that he should have found that the headaches preclude an ability to work on a regular continuing basis. We disagree.

The ALJ noted, plaintiff alleges that she has suffered debilitating headaches for many years. Clearly, however, she did engage in work on a regular and continuing basis during that time frame. Thus, substantial evidence supports the ALJ's analysis on this point.

The ALJ also noted that: "There is some evidence of white matter lesions on brain scan, but no clinical correlation was indicated for these headaches." The R&R finds no error in this statement. Plaintiff objects to the adoption of this

---

[2] The plaintiff points out that actually she testified that she had the headaches since when she was 16-17 years old, thus at the time of the hearing she had had the headaches for approximately 30 years. This longer time period of having the headaches only strengthens the ALJ's reasoning.

16

portion of the R&R.  Plaintiff, however, has presented no evidence of a correlation between the white matter lesions and the headaches.[3]  Accordingly, the objection will be overruled.

**Conclusion**

For the reasons set forth above, we find no merit to the plaintiff's objections.  The objections will thus be overruled and the R&R will be adopted.  An appropriate order follows.

**BY THE COURT:**

**Date: Feb. 28, 2019**                    **s/ James M. Munley**
                                           **JUDGE JAMES M. MUNLEY**
                                           **United States District Court**

---

[3] Plaintiff presents evidence of a correlation between the headaches and physical problems that the plaintiff has, but that is not the subject of the ALJ's sentence about which she objects.

17